**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

DAVID KNELLINGER; ROBERT
STOREY,

     Plaintiffs - Appellants,

v.

DAVID YOUNG, in his individual and
official capacities as Colorado State
Treasurer, Colorado Office of Treasury;
BIANCA GARDELLI, in her individual
and official capacities as Director of
Colorado Department of Treasury,
Unclaimed Property Division,

    Defendants - Appellees.

No. 23-1018

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:22-CV-01379-CNS-STV)**

_____

Richard M. Paul III, Paul, LLP, Kansas City, Missouri (Jonathan Greiner and Christopher
Ross, Griener & Associates, PLLC, San Antonio, Texas; and Laura C. Fellows and David
W. Bodenheimer, Paul, LLP, Kansas City, Missouri; with him on the briefs), for
Plaintiffs-Appellants

LeeAnn Morrill, First Assistant Attorney General (Amy Colony and Jennifer H. Hunt,
Senior Assistant Attorneys General, with her on the briefs), Denver, Colorado, for
Defendants-Appellees

_____

Before **BACHARACH**, **PHILLIPS**, and **EID**, Circuit Judges.

_____

**EID**, Circuit Judge.

_____

This case concerns the application of Colorado's Revised Uniform Unclaimed Property Act ("RUUPA"), Colo. Rev. Stat. §§ 38-13-201–220, and its interaction with the Takings Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment.

After learning that the state of Colorado took possession of specific property under RUUPA, David Knellinger and Robert Storey (collectively, "Plaintiffs") filed suit under 42 U.S.C. § 1983, alleging that Colorado's unclaimed property scheme violated the Takings Clause. The district court dismissed their claims for lack of standing. In its view, they failed to sufficiently allege ownership of the property at issue, in part because Plaintiffs never filed an administrative claim to establish ownership as required by RUUPA.

Knellinger and Storey now appeal that decision, arguing that they alleged facts sufficient to state a claim that Colorado took their property for public use without just compensation. We agree. Property owners who plausibly allege that Colorado has taken custody of their property under RUUPA, and used it for public purposes, need not file administrative claims with Colorado before they may sue for just compensation. The moment a state takes private property for public use without just compensation, a property owner has an actionable claim under the Takings Clause. At this phase in the litigation, it is premature to decide whether any such taking occurred here. However, taking the allegations of the complaint as true and viewing

them in the light most favorable to the non-movant, we hold that the property owners

in this case stated a plausible claim for damages and therefore adequately pleaded an

injury sufficient to confer standing.  The district court, however, properly dismissed

Plaintiffs' equitable claims because § 1983 provides an adequate basis for Knellinger

and Storey to obtain just compensation for any taking.

Accordingly, we AFFIRM the district court's dismissal of Plaintiffs' equitable

claims, REVERSE the district court's dismissal of their damages claims, and

REMAND to the district court for proceedings consistent with this opinion.

**I.**

Under RUUPA, Colorado presumes that certain property has been abandoned

after a period of time defined by statute.[1]  *See* Colo. Rev. Stat. §§ 38-13-201–220.

The time period differs depending on the type of property.  For example, if an

employee has failed to collect his wages "one year after the amount becomes

payable," those wages are "presumed abandoned."  *Id.* § 38-13-201(1)(k).  If a retail

store owes a customer a refund, however, the customer has three years to collect such

refund before Colorado presumes that money to be abandoned.  *See id.*

§ 38-13-201(1)(f).  Once Colorado presumes property to be "abandoned" under

RUUPA, whoever holds the property must report it and then pay or deliver it to the

Colorado State Treasurer.  *Id.* §§ 38-13-401, 38-13-603.  If, for instance, someone

---

[1] RUUPA itself took effect in 2020, but Colorado has employed a similar unclaimed property scheme since at least 1987.  *See* Colo. Rev. Stat. §§ 31-13-101–134 (1987).  RUUPA also contains some exceptions to the following provisions, not relevant here.

waits more than one year to collect or to cash his final paycheck, his former employer must report and pay the uncollected wages to the Treasurer.

RUUPA requires the Treasurer to hold the unclaimed property he receives "in custody for the benefit of the owner." *Id.* § 38-13-803. If the relevant property is money, the Treasurer holds it in Colorado's unclaimed property trust fund. *Id.* § 38-13-801. If the property takes another form, the Treasurer may typically sell it after three years, with all proceeds to the trust fund. *Id.* §§ 38-13-701, 38-13-801. In theory, such property "is not owned by the state," *id.* § 38-13-803, and it "does not revert to the general fund" automatically, *id.* § 38-13-801. Nevertheless, Colorado regularly reappropriates money from the unclaimed property trust fund to the state's general fund, or to specific public uses, such as the Colorado state fair. *See id.* §§ 38-13-801, 38-13-801.5.

A property owner who discovers that Colorado has taken his property may recover it by filing an administrative claim. *Id.* § 38-13-903. If the Treasurer denies such claim or fails to respond to it, RUUPA authorizes a suit to recover the property in the district court for the City and County of Denver. *Id.* § 38-13-906.

Under RUUPA, once Colorado takes possession of the abandoned property, the Treasurer must provide direct notice to a property owner if the Treasurer has the property owner's email address and "does not know [it] to be invalid." *Id.* § 38-13-503. The Treasurer also may, but need not, notify the property owner by other means such as first-class mail or telephone. *Id.* If the Treasurer does not have a valid email address for the property owner, the Treasurer is not required to provide

4

direct notice, but need only maintain a website with a list of all property owners whose property has been transferred to the Treasurer. *Id.* Colorado maintains such an unclaimed property website in compliance with RUUPA.

In 2022, David Knellinger and Robert Storey visited Colorado's unclaimed property website and discovered a listing for their property. The website listed property previously possessed by "DAVID KNELLINGER" and "STOREY ROBERT E," valued at "$50–$249" and under "$50," respectively. App'x at 10–11. The website did not list the type of property or the precise value. Moreover, Plaintiffs had never received notice of Colorado taking any of their property, nor any compensation for it.

Knellinger and Storey did not file administrative claims, nor did they file a suit in Denver County Court as authorized by RUUPA. Instead, Plaintiffs sued in federal district court. As relevant here, Knellinger and Storey brought a claim under 42 U.S.C. § 1983, alleging that Colorado's unclaimed property scheme violated the Takings Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment. They filed suit against the officials in charge of administering RUUPA: David Young (the Colorado State Treasurer) and Bianca Gardelli (the Director of the Unclaimed Property Division of the Treasury) in their individual and official capacities (collectively, "Defendants"). Knellinger and Storey alleged that Defendants had "taken control of and liquidated" their property and "converted [it] to public use" without "just compensation." App'x at 34. They sought a monetary remedy of "restitution of the proper value of their property . . .

5

according to the applicable principles of law for reimbursement purposes"—that is, "just compensation." *Id.* at 34–35. They also sought to enjoin Defendants from violating the Takings Clause in the future.

In addition to their personal takings claims, Plaintiffs also sued on behalf of a putative class of "[a]ll persons or entities who did not receive actual notice before their property was taken by the State of Colorado between May 27, 2016[,] and the present." *Id.* at 30. They asserted the same rights and sought the same remedies for the class as for their individual claims.

In addition to the facts described above, Knellinger and Storey alleged other facts relevant to the elements of their takings claims. They alleged facts concerning Colorado's public use of the property—for instance, that Colorado "commingle[s]" the unclaimed property trust fund "with the General Revenue Fund to supplement the State's budget, and to pay general State debts," and that property from the trust fund is "appropriated by the State for various spending initiatives, including Colorado State Fair Cash." *Id.* at 19–20. Plaintiffs therefore alleged that, because Colorado uses the unclaimed property trust fund for other purposes, Colorado's Department of Treasury "unlawfully converts the property owner to the State," rather than "keeping custody of the abandoned property in trust for the life of the property owner." *Id.* at 20. Plaintiffs' complaint also claimed that, when Defendants "seized" their property, they did so "without notice, [their] knowledge, or [their] consent." *Id.* at 10. Further, Knellinger and Storey asserted that Defendants did not compensate them upon taking their property.

Defendants moved to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and (6). Following briefing and argument, the district court granted Defendants' motion to dismiss. Although the district court dismissed Plaintiffs' Takings Clause claims for lack of standing, its analysis of standing was coextensive with its analysis of the merits of the Takings Clause claims.

Relying only on the allegations in Plaintiffs' complaint, the district court considered whether Plaintiffs could "establish standing," or whether, as Defendants argued, Plaintiffs "fail[ed] to allege within the Complaint that they are the actual owners of any unclaimed property as identified on the Colorado Treasury's website." App'x at 202. The district court agreed with Defendants that Knellinger and Storey "ha[d] not sufficiently alleged ownership of the respective property identified in the Complaint." *Id.* at 204.

The district court identified three purported shortcomings on the face of Plaintiffs' complaint. First, the district court determined that the "potential claims" identified in the complaint "may be claims of individuals who have similar names." *Id.* Second, the district court noted that Knellinger and Storey did not allege that they had filed "an administrative claim to establish ownership over the property." *Id.* Third, the district court concluded that Plaintiffs failed to allege the specific dollar value of the property and "fail[ed] to specify or identify what type of property was allegedly improperly seized and whether the property was actually owned by them." *Id.*

7

For these reasons, the district court concluded that Knellinger and Storey did not plead that a taking had occurred, and thus did not plead "an actual injury in fact." *Id.* at 204–05; *see id.* (evaluating whether Plaintiffs "sufficiently alleged ownership of the respective property identified in the Complaint"). The district court also determined that Plaintiffs failed to allege facts sufficient to give rise to claims for equitable relief. Accordingly, it dismissed their § 1983 claims for monetary and equitable relief without prejudice. Because a class representative must have individual standing for a class to be certified, the district court likewise dismissed Plaintiffs' claims on behalf of the putative class.

## II.

The parties dispute the standard of review applicable to the district court's order dismissing the complaint. Although the parties both argue that we should review the district court's order as a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), they disagree about how to review the facts alleged in the complaint. Plaintiffs argue that the district court ruled on "a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Thus, Plaintiffs claim, we should accept all allegations in the complaint as true. *See id.* Conversely, Defendants argue that they brought and the district court ruled on "a challenge to the actual facts upon which subject matter jurisdiction is based." *Id.* If Defendants are correct, any facts found by the district court are reviewable only for clear error. *See id.*

8

We have the "unavoidable" obligation to determine our standard of review in each case, regardless of the standard advocated by any party. *Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009); *see United States v. Fonseca*, 744 F.3d 674, 682 (10th Cir. 2014) ("Although both parties thus suggest a standard of review that is more favorable to the opposing side, we note that the court, not the parties, must determine the standard of review." (internal quotation marks and citation omitted)).

We conclude that the analysis of standing in this case is inextricably intertwined with the merits—as the district court recognized in its order. Therefore, we deem the district court's order to have dismissed the complaint for failure to state a claim under Rule 12(b)(6). Accordingly, we review the dismissal de novo and accept all allegations in the complaint as true.

Rule 12(b)(1) concerns whether federal courts have "[s]ubject-matter jurisdiction," which "refers to a tribunal's power to hear a case." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (internal quotation marks and citations omitted). "[Q]uite separate" is the question at issue in Rule 12(b)(6), which is the "merits question" of "whether the allegations the plaintiff makes entitle him to relief." *Id.* Therefore, a district court "is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000) (cleaned up). A jurisdictional question is intertwined with the merits of the case when "the jurisdictional question requires resolution of an aspect of the substantive claim." *Id.*

9

at 1223; *See Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292–93 (10th Cir. 2005) (concluding that if "[t]here is no overlap between the cause of action and the jurisdictional" question, it is "appropriate for the district court to consider extra-pleading evidence in its resolution of [a] Rule 12(b)(1) motion"); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (4th ed. 2024) ("If, however, a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case, the decision should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at the trial." (footnotes omitted)).

As the district court recognized, the merits question and jurisdictional question entirely overlap in this instance. Consider what is actually in dispute. Knellinger and Storey pleaded that the property at issue has some monetary value, which no one contests. Nor is there any question that an uncompensated taking of valuable property would be a "financial harm," indeed a "classic pocketbook injury," sufficient to confer standing. *Tyler v. Hennepin County*, 598 U.S. 631, 636–37 (2023). The only disagreement is whether Defendants took Plaintiffs' property in the first place. Although Plaintiffs would not have standing if Defendants did not take their property, neither would they have a claim on the merits. That is why the district court's analysis of whether Plaintiffs alleged "an injury in fact" began and ended with its analysis of whether they "sufficiently alleged ownership of the respective property identified in the Complaint." App'x at 204. The two questions are inherently intertwined.

10

We thus must decide whether to convert Defendants' Rule 12(b)(1) motion into a motion to dismiss for failure to state a claim under Rule 12(b)(6) or a motion for summary judgment under Rule 56. *See Pringle*, 208 F.3d at 1222. Notwithstanding Defendants' argument to the contrary, we do not read the district court's order as making any findings of fact relevant to the question before us. Although the district court acknowledged Defendants' factual contentions, the district court relied only on the allegations in Plaintiffs' complaint when it concluded that they failed to plead an injury in fact. Therefore, as is the practice in this Circuit, we construe Defendants' Rule 12(b)(1) motion as a motion to dismiss for failure to state a claim under Rule 12(b)(6).[2] *See Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997).

We review a dismissal for failure to state a claim de novo. *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1280 (10th Cir. 2023). "At this initial stage, we take the facts in the complaint as true," *Tyler*, 598 U.S. at 636, and we view such facts in the light most favorable to the plaintiff, *E.W.*, 86 F.4th at 1280. Dismissal for failure to state a claim "is appropriate only if the complaint . . . lacks enough facts to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and citation omitted).

---

[2] We would reach the same conclusions were we to deem Defendants' motion one for summary judgment under Rule 56, because there is a genuine issue of material fact as to whether Defendants took Plaintiffs' property or the property of other unrelated individuals named David Knellinger and Robert Storey, and because Defendants have not demonstrated that they are entitled to judgment as a matter of law.

11

## III.

Having determined the correct standard of review, we conclude that the district court erred in dismissing Plaintiffs' claims for monetary relief. Knellinger and Storey pleaded facts sufficient to state a plausible claim that Colorado took their property for public use and did not compensate them for it, in violation of the Fifth and Fourteenth Amendments. As mentioned above, an uncompensated taking is a classic example of a financial harm sufficient to confer standing. *Tyler*, 598 U.S. at 636–37. Plaintiffs' allegations are thus enough to maintain their claim for monetary relief under § 1983, and enough for standing.

Under our Constitution, "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. When it is, the property owner suffers a violation of his Fifth Amendment rights. *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019). "The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Id.* at 190. Accordingly, the moment "the government takes . . . property without paying for it," the owner of such property "has an actionable Fifth Amendment takings claim," and "therefore may bring his claim in federal court under § 1983 at that time" without first seeking other state-law remedies. *Id.* at 185. What counts as "property" depends both on existing "state law" and on "'traditional property law principles,' plus historical practices and [Supreme Court] precedents." *Tyler*, 598 U.S. at 638 (quoting *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 167 (1998)).

In short, to make out a Takings Clause claim, a plaintiff must plead that: (1) something was "taken" by the government; (2) it was "property"; (3) it was the plaintiff's property; and (4) it was taken "for public use, without just compensation." Plaintiffs pleaded facts sufficient to make plausible each of these elements. Therefore, they sufficiently stated a Takings Clause claim.

First, Knellinger and Storey adequately pleaded that Colorado took property for public use. In particular, they pleaded that Defendants reappropriated money from the unclaimed property trust fund to pay public expenses. *See* App'x at 13, 19–20. They thus alleged that Defendants took money from a trust fund that "is not owned by the state," Colo. Rev. Stat. § 38-13-803, and moved it into Colorado's coffers. Taking money that is not owned by the state and transferring it to state ownership, for state use, is a quintessential taking.[3]

Next, Plaintiffs' complaint also adequately pleaded that they were not compensated for such taking. Plaintiffs alleged that they did not even receive notice of the taking—much less compensation. That is why their complaint sought "restitution of the proper value of their property." App'x at 34; *see id.* ("To the

---

[3] Plaintiffs allege that Defendants took their property even earlier, when Colorado seized and took custody of the abandoned property. This presents the question of whether a state may avoid a Takings Clause claim by defining ownership such that a citizen remains the de jure "owner," even if the state takes de facto ownership. *Cf. Tyler*, 598 U.S. at 638 (recognizing that a state may not "sidestep the Takings Clause by disavowing traditional property interests" or by "exclud[ing] from its definition of property any interest that the state wished to take") (internal quotation marks and citations omitted). At this stage, we need not reach that question; we need only decide whether Plaintiffs had a cognizable Takings Clause claim by the time they filed suit.

extent that said Plaintiffs' property was converted to public use, Plaintiffs are entitled to just compensation . . . .").

That leaves the question of whether Knellinger and Storey sufficiently alleged that Defendants took *their* property, rather than someone else's. We conclude that Plaintiffs pleaded facts sufficient to state a claim that they owned the property at issue. Knellinger pleaded that Defendants took property belonging to someone with the name "DAVID KNELLINGER." *Id.* at 10. Likewise, Storey pleaded that Defendants took property belonging to someone with the name "STOREY ROBERT E." *Id.* at 11. They further pleaded that Colorado lists such property on its unclaimed property website, and that Colorado provides value ranges to the property. Knellinger and Storey pleaded that they have been Colorado residents subject to Colorado's unclaimed property scheme for the last decade. It is reasonable to infer that the property listed on Colorado's unclaimed property website belongs to Plaintiffs. We therefore draw that reasonable inference in their favor.

The district court ruled otherwise. It concluded that Plaintiffs failed to sufficiently allege ownership and thus dismissed their Takings Clause claim for lack of standing. However, the district court made two errors in ruling against Knellinger and Storey.

First, the district court drew improper inferences against Plaintiffs, instead of drawing all reasonable inferences in their favor. For instance, the district court inferred that the property owned by "DAVID KNELLINGER" and "STOREY ROBERT E" might belong to individuals with "similar names." *Id.* at 204. But the

14

names Knellinger and Storey are uncommon enough that it is reasonable to infer that the David Knellinger and Robert Storey from whom Colorado took property are the same individuals who filed this suit. The fact that Plaintiffs have both lived in Colorado since 2013 further supports such an inference. It was thus improper for the district court to draw a contrary inference against Plaintiffs.

Second, the district court imposed a de facto requirement that a plaintiff must file an administrative claim with Colorado prior to proceeding in federal court. *See id.* However, under *Knick*, it is clear that a property owner has no obligation to seek a remedy through state administrative proceedings or through litigation in state court. 588 U.S. at 185. A property owner's "right to full compensation" is not contingent on "post-taking remedies that may be available." *Id.* at 190. Rather, that right vests "when the government takes his property without just compensation." *Id.* at 185. That is true even if an administrative proceeding—or state court discovery—could yield additional facts helpful to a federal Takings Clause suit.[4]

---

[4] Defendants invite us to go further than the district court, arguing that Knellinger and Storey must not only file an administrative claim but have it *approved by the state*. Aple. Br. at 20 ("Absent approved administrative claims establishing their actual ownership of the property identified in the complaint at the outset of this litigation, the ability to redress their alleged injuries in the later damages phase is wholly 'speculative.'"). Defendants would have us hold that, absent state approval, Knellinger and Storey could sue only if they could provide proof that Colorado denied their claim in bad faith. *See id.* at 38–39. In other words, Defendants appear to argue that property owners must exhaust whatever administrative procedures a state imposes and must receive state approval of their Takings Clause claims before filing in federal court.

For the same reasons stated in our discussion of *Knick*, we decline Defendants' invitation. A property owner's compliance with state-imposed procedures is immaterial to the determination of whether a taking occurred. *See Knick*, 588 U.S.

We therefore disagree with the district court's approach. Colorado's unclaimed property website lists the property it took as belonging to David Knellinger and Robert Storey. The plaintiffs here, David Knellinger and Robert Storey, live in Colorado, and have for many years. It is reasonable to infer that the property is theirs. That is enough, at this stage, for their Takings Clause claims to survive; it is not necessary for Plaintiffs to identify what piece of their property Defendants allegedly took without their knowledge. Nor is it necessary for Plaintiffs to plead the precise value of the property taken in order to avoid a motion to dismiss. That is a question of precise damages for a much later stage.

Knellinger and Storey alleged that the property at issue in this case was theirs. They also did so with adequate specificity under the circumstances. Because Knellinger and Storey alleged facts sufficient to state a claim that Defendants, acting on behalf of Colorado, took their property for public use without just compensation, the district court erred in dismissing their Takings Clause claims.

## IV.

While Plaintiffs' monetary claims survive, their equitable claims do not share the same fate. "As long as an adequate provision for obtaining just compensation

---

at 190 ("[N]o matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it."). Thus, a property owner has "a claim for a violation of the Takings clause as soon as" Colorado takes "his property for public use without paying for it." *Id.* Consequently, an aggrieved property owner would be able to "bring his claim in federal court under § 1983 at that time." *Id.* at 185.

exists, there is no basis to enjoin the government's action effecting a taking." *Id.* at 201; *see id.* at 202 ("Given the availability of post-taking compensation, barring the government from acting will ordinarily not be appropriate."). In this instance, § 1983 provides an adequate basis for Knellinger and Storey to obtain just compensation for any taking. Because Knellinger and Storey may "pursue a suit for compensation" under § 1983, they have "an adequate remedy at law," and "equitable relief is . . . unavailable." *Id.* at 200–01.

Of course, if Colorado wishes to avoid defending against § 1983 suits for unclaimed property, it may always decide voluntarily to revise its laws or practices with respect to unclaimed property. For instance, Colorado may implement administrative procedures designed to make just compensation more convenient or timely compared to inverse-condemnation litigation. But the Fifth Amendment describes a right to just compensation, not a right to particular procedures to secure such compensation, so Knellinger and Storey have no ability to force Colorado to compensate property owners through their procedure of choice. In other words, it is the role of our Court to ensure just compensation, not to rewrite a state's procedures for obtaining it.[5]

---

[5] Because the district court properly dismissed Plaintiffs' equitable claims, we need not consider Defendants' arguments that federal courts should abstain from deciding such claims under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

**V.**

We express no opinion as to whether Knellinger and Storey should prevail on the merits. The question of whether Defendants in fact took their property is not before us at this stage of the litigation. Nor is the question of whether Knellinger and Storey may bring suit on behalf of the proposed class. For now, all we decide is that Plaintiffs' complaint plausibly alleges that Defendants, acting on behalf of the state, took their property for public use and without just compensation, and thus alleges a violation of their Fifth and Fourteenth Amendment rights. That alleged violation, in turn, provides Plaintiffs with standing to sue. Because the district court ruled otherwise, it erroneously dismissed Plaintiffs' claims for damages under § 1983.

We therefore **AFFIRM** the district court's dismissal of Plaintiffs' equitable claims, **REVERSE** the district court's dismissal of their damages claims, and **REMAND** to the district court for proceedings consistent with this opinion.